THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LOUAN KAREN McNEMAR, | ) | Case No 05-03879 |
| and EARL KEMPER McNEMAR, II | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| LOUAN KAREN McNEMAR, | ) | |
| | ) | Adv. Proc. No. 05-00219 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STUDENT LOAN SERVICING CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Louan Karen McNemar (the "Debtor") seeks to discharge a government-guaranteed education loan owed to the Student Loan Servicing Center ("SLSC") on the grounds that repayment of the education loan would constitute an undue hardship on her. For the reasons stated herein, the court finds that repayment of the education loan does not constitute an undue hardship and the loan is excepted from discharge pursuant to 11 U.S.C. § 523(a)(8).

**BACKGROUND**

The Debtor filed a joint Chapter 7 bankruptcy with her husband on September 8, 2005, and initiated this adversary proceeding to discharge her student loan on December 15, 2005. The court held a trial in this adversary proceeding on May 25, 2006, in Clarksburg, West Virginia.

1

The Debtor is fifty-eight years old. Her husband is the same age. They have five sons, the youngest of which is thirty-one years old. The Debtor is a homemaker and has not worked outside the home. In 1991, the Debtor borrowed $3,607.60 under the Parent PLUS loan to assist her son, Daniel, in paying for his education at the West Virginia Business College.

The Debtor's husband supports the family, but recently had open-heart surgery, which reduced his work to forty hours per week. The gross monthly income for the household is $3,002.13. After accounting for the overwithholding of taxes, the Debtor's household has a net monthly income of about $2,288.15.[1] The household expenses average $2,125.11 per month, exclusive of any education loan payments, leaving approximately $163.04 in monthly disposable income.[2]

The Debtor has high blood pressure and does not anticipate earning any income in the future. Although her husband is still able to work after his post-petition open-heart surgery, the household has unpaid medical bills, which the Debtor anticipates will cost about $225.00 per month in addition to the Debtor's current expenses.[3] The Debtor testified that she anticipates a monthly payment of $225.00 toward the medical bill, which has not been accounted for in the monthly expenses.

In total, the Debtor made nineteen payments on the Parent PLUS loan from 1991 to 1995. During that time, she repaid approximately $950.00 of the obligation in nineteen installments of fifty dollars. In an attempt to resolve a dispute with SLSC over prior loan credits, the Debtor agreed to have the loan rewritten in 1995; however, the Debtor only made one or two payments on the loan after it was rewritten and did not make any payments on the loan after 1995.

## DISCUSSION

---

[1] Because the Debtor anticipates receiving a $3,000.00 federal tax refund, the court has averaged it over twelve months in the income calculation.

[2] The Debtor submitted an expenditure worksheet to the court, which lists all expenses for a three-month period. The Debtor listed a state tax payment of $1,712.00 during one month. The court deducted this amount from the worksheet and then averaged it over twelve months to reach the Debtor's total monthly expenditures.

[3] At the time of trial, the Debtor was uncertain as to what portion of the $34,000.00 in medical bills, if any, would be paid by their health insurance.

In order to receive a discharge of an education loan, a debtor must establish an undue hardship by proving each of the three prongs of the *Brunner* test by a preponderance of the evidence. *Eddy v. U.S. Department of Education and Educational Credit Management Corporation* (*In re Eddy*), No. 05-00210 (Bankr. N.D. W.Va. September 28, 2006). The *Brunner* test requires a debtor to prove: (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and (3) that the debtor has made good faith efforts to repay the loans. *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987).

The third prong of the *Brunner* test requires a debtor to demonstrate that she has made good faith efforts to repay the loans.[4] The good faith inquiry looks to a debtor's "efforts to obtain employment, maximize income, and minimize expenses." *In re Frushour*, 433 F.3d 393, 402 (4th Cir. 2005). A debtor's hardship must be a result of factors that are beyond the debtor's control. *Id.* In that regard, the court must examine whether the debtor has made the "requisite effort to repay her loans." *Id*. A debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good-faith inquiry. Although not always dispositive, it illustrates that the debtor takes her loan obligations seriously and is doing her utmost to repay them despite her unfortunate circumstances. *Id*. For instance, a debtor's failure to seriously consider available repayment options such as loan consolidation and an income contingent repayment plan is evidence of lack of good faith by failing to exhibit a willingness to pay back the debt when reasonable alternatives to discharge are available. ("Frushour's only reasons for refusing that option [income contingent repayment plan], however, were that it was not suited for her and she wanted a fresh start. It is hard to see why these reasons are not simply shorthand for her lack of interest in repaying her debt."). *Id*. at 403.

---

[4] Whether the Debtor has satisfied the first and second prongs of the *Brunner* test is not addressed because the court finds that she has failed to prove the third prong. Since the *Brunner* factors are stated in the conjunctive, failure to establish even one factor means failure to pass the test.

3

In the case at hand, although the Debtor testified that she made nineteen payments, totaling approximately $900.00 toward satisfaction of the education loan beginning in 1991, she has not made any payments on the obligation since 1995. The Debtor testified that she voluntarily ceased making payments on the loan, not because of financial hardship, but because she disputed how SLSC applied previous credits. However, despite being fully aware of her obligation regarding the loan, the Debtor simply chose not to make any more payments. In fact, during her testimony, she characterized her behavior in that regard as being, "really stupid." Thus, she made a conscious decision beginning in 1995, which continued until 2005, at which time she filed her bankruptcy, not to render further payment on the loan obligation; conduct that was entirely within her control. No evidence was presented by the Debtor to suggest that during the bulk of the period of time preceding the filing of her bankruptcy petition, she was without the financial wherewithal to make payments on the loan. The early payments on the loan by the Debtor, while "commendable," are not sufficient indicia of good faith under the facts of this case. *See Frushour*, 433 F. 3d at 402. The Debtor's failure to make any payments on the obligation for over ten years, despite the financial ability to do so, demonstrates a lack of good faith under the applicable Fourth Circuit jurisprudence. Consequently, the Debtor has failed to carry her burden of proof as to the third prong. The Debtor is not entitled to discharge her student loans.

## CONCLUSION

For the reasons stated herein, the Debtor's education loan is excepted from her discharge pursuant to 11 U.S.C. § 523(a)(8).

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.